IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                              Criminal No. 16-464 WJ

RAY L. SMITH, et al.

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR ORDER COMPELLING SPECIFIC DISCOVERY**

THIS MATTER comes before the Court upon Defendant's Motion for Order Compelling Specific Discovery, filed March 31, 2017 **(Doc. 116)**. Defendant seeks an order compelling the Government to disclose additional discovery, under *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) and Fed.R.Crim.P. 16.[1] Having reviewed the parties' briefs and applicable law, the Court has determined that Defendant's motion is DENIED with respect to the request for raw phone data. As for the portion of Defendant's Motion seeking to compel discovery on controlled substance analogue material, the Court DENIES this request but such denial is without prejudice to Defendant re-filing his motion for discovery on controlled substance analogue material at the appropriate time.

**BACKGROUND**

Defendant owned stores in Tucumcari, New Mexico, Las Vegas, New Mexico, Raton, New Mexico, and Kingman, Arizona. At these stores, Defendant sold drug and smoking

---

[1] Defendant also refers to the Fifth Amendment Due Process Clause and the Sixth Amendment Compulsory Process Clause as grounds for this motion, but these constitutional rights are subsumed in the discussions on *Brady* and *Giglio*.

paraphernalia, body jewelry, sex toys, tobacco products, and most significantly according to the Government, synthetic cannabinoids, a Schedule I controlled substance known colloquially by the monikers "Spice" or "herbal incense." On February 9, 2016, a federal grand jury returned a four-count indictment against Defendant and his co-defendant, accusing Defendant of conspiring to distribute Schedule I controlled substances and controlled substance analogues in violation of 21 U.S.C. §§ 802(32), 813, 841, and 846; maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a); aiding and abetting in violation of 8 U.S.C. § 2; and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Doc. 2).

Defendant seeks additional discovery in the form of raw phone data and evidence relevant to controlled substance analogues.

## I. Relevant Law

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The standard for determining materiality for *Brady* purposes is well established. Under *Brady,* the "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007). "The question is not whether the defendant would more likely than not receive a different verdict with the evidence, but whether in its absence he would receive a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing Bagley, 473 U.S. at 678).

The Government's duty includes "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 434 & 437 (1995); *see U.S. v. Velarde,* 485 F.3d 553, 559 (10th Cir. 2007). The prosecutor has a duty to disclose *Brady* evidence even if they do not personally know of the evidence. *Velarde,* 485 F.3d at 559. The prosecutor's duty encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676 (1985); *Nuckols v. Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) (prosecution's disclosure obligation extended to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory). Failure to disclose impeachment evidence violates *Brady* when a witness's credibility is material to the question of guilt. *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989).

Fed.R.Crim.P.16 (1)(1)(E) requires the Government to disclose "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" that are material to preparing the defense, as well as reports of examinations and tests. Rule 16(a)(1)(E(i) & (F)(iii). Rule 16 is "broader than *Brady"* in that it mandates disclosure of any material information, whether exculpatory or not. *U.S. v. Muniz-Jaquez,* 718 F.3d 1180, 1183 (9th Cir. 2013). Under Rule 16, the "materiality" standard is "not a heavy burden" and means that there is a strong indication that the evidence will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *U.S. v. Felt,* 491 F.Supp. 179, 186 (D.D.C. 1979); *U.S. v. Lloyd,* 992 F.2d 348, 353-53 (D.C.Cir. 1993) (remand in case of aiding and abetting of false tax returns of government witnesses since similarities might have tended to show that falsities originated with tax payer instead of defendant).

The Government argues that disclosure under Rule 16(a)(1) must be considered against the backdrop of Fed.R.Crim.P. 16(a)(2) which exempts two categories of materials from the broad disclosure requirements of Rule 16. The first category pertains to: "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," and statements of government witnesses." This provision has a function similar to the work product doctrine in the civil context. *See United States v. Noble*, 422 U.S. 225, 238 (1975)(describing as "vital" the role of the work product doctrine in "assuring the proper functioning of the criminal justice system"); see also Fort, 472 F.3d at 1115-16 (stating, "Rule 16(a)(2)'s protection of investigative materials extends beyond the work product privilege as defined in the civil context" and noting that Rule 16(a)(2)'s drafters intended the Rule to be "related to the work product doctrine but not synonymous or coextensive with it").[2]

The second category of material exempted from disclosure under Rule 16 includes statements by government witnesses. The second sentence of Rule 16(a)(2) states: "Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 (the Jencks Act)." Fed. R. Crim. P. 16(a)(2). The Government points out that the logical implication of this provision is that statements of non-testifying witnesses are not subject to disclosure under Rule 16.

Defendant seeks disclosure of two categories of material: (1) evidence on which the Government purportedly relied to apply for search warrants and wiretap applications in this case; and (2) material relevant to controlled substance analogues. The Government contends either that Defendant is not entitled to the material, or that the issue is not ripe for litigation.

---

[2] The boundaries of Fed.R.Crim.P. 16 are considered to be drawn more broadly than the civil Rule 16. *U.S. v. Fort,* 472 F.3d 1110, 1115 (9th Cir. 2007). For instance, police reports are unlikely to receive the same kind of work product protection in the criminal context as it gets in the civil context. *Id.* at 1116.

**II.      Search Warrant & Wiretap Material (see Doc. 116, pp 11-12)**

Defendant points out that he would not be able to meet his burden under *Franks v. Delaware,* 438 U.S. 154 (1978) in challenging a search warrant application if he is denied the evidence on which the issuing magistrate relied to issue the search warrant.  Defendant observes that the Government has certain tactical advantages over the accused, having greater financial and staff resources and an advantages in information-gathering techniques, and the ability "to search private areas and seize evidence" with probable cause.  *Wardius v. Oregon,* 412 U.S. 470, 475 n.9 (1973); *see also Young v. United States*, 481 U.S. 787, 813 (1987) (prosecution "has the power to employ the full machinery of the state in scrutinizing any given individual").

    A.      Rule 16 Disclosures

The Government contends that Defendant has not shown any "materiality" under Rule 16 for the phone data in that he has not shown how it would be helpful for the defense.  Instead, the Government characterizes this request for raw phone data as a "fishing expedition", noting that Rule 16's definition of "materiality" was not meant to constitute an "open file" as to what the Government has in its possession or to include every item a defendant might consider noteworthy.  It also argues that there are already safeguards in place to ensure that the Government follow strict procedural requirements to obtain a Title III wiretap authorization, as well as for a showing of probable cause.  *See* 18 U.S.C. §§2516(1), 2518(1), (3)-(4); *U.S. v. Castillo-Garcia,* 117 F.3d 1179 (10th Cir. 1997).

    B.      Disclosures Under 18 U.S.C. §2518(9)

Chief Judge M. Christina Armijo authorized the wiretaps for both Defendant and co-defendant Tamara Phillips in November 2015 and January 2016.  Defendant seeks the raw phone data that came from the wiretaps, but the Government contends that it has already turned over

5

everything it is obligated to disclose under the wiretap statute, 18 U.S.C. §2518 (procedure for wire interception). That statute requires the Government to disclose court orders and applications under which wiretap interception was authorized, ten days before the contents are presented in court. *See In re Grand Jury Proceedings,* 841 F.2d 1048, 1053 n.9 (11th Cir. 1988). The Government states that it has already turned over the Applications, Affidavits and Orders pertaining to both wiretaps. It also provided Defendant with audio copies of intercepted calls and corresponding linesheets. The Government claims that because the agent did not submit raw phone data to the authorizing judge for review but instead relied on limited summaries within sworn affidavits, it is not obligated to turn over the phone data. *See United States* v. *Yoshimura*, 831 F.Supp. 799 (D. Hawaii 1993) (under §2518(1), court has discretion to decide whether intercepted communications should be furnished to a defendant).

        C.        *Brady* Disclosures

The Government contests Defendant's request for the raw phone data under *Brady* because the raw phone data is neither exculpatory nor material to the defense. *United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009) (defendant must adequately demonstrate the materiality of requested material). In support of his request, Defendant raises an instance in a past and unrelated investigation, where the same agent (Agent Castleberry) allegedly miscalculated the number of common calls between two phones in an affidavit (16 calls instead of 29 calls). *See* Doc. 116 at 9, n.1. The Government contends this kind of error is material only if it is related to the question of guilt—but here the accuracy of phone data summarized in affidavits is not related to Defendant's guilt. Because it is not exculpatory, it is therefore not discoverable under *Brady*.

        D.        *Franks* Challenge

Finally, Defendant frames his request for raw phone data as necessary for a *Frank v. Delaware* challenge. Under *Franks*, a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. *Franks*, 438 U.S. at 155–56). The Tenth Circuit has extended the Franks framework to omissions of material information. *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). A preliminary showing of false information or omissions is not sufficient to successfully challenge an affidavit to a search warrant. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) ("Under *Franks*, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."). Instead, the defendant must show that the affiant knowingly falsified information or recklessly disregarded the truth, not simply that information was omitted from the affidavit or that the information wasn't completely true. See *United States v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989) ("it is not enough to show that . . . an affiant's negligence or innocent mistake resulted in false statements in the affidavit").

The Government contends that *Franks* does not itself create a discovery obligation, and Defendant cannot use *Franks* as a mechanism to get discovery without first establishing the preliminary showing of a deliberate falsehood—and that has not been done in this case.

E.     <u>Requested Material is Not Discoverable</u>

The Court finds that Defendant's request for the raw phone data does not belong in any of the categories of discovery to which Defendant is entitled. The data is not "material" under Rule 16 because it has no bearing on the Government's case in chief, and therefore is not material to preparing a defense against the issues that will be raised in the case in chief. It is not

7

discoverable under the wiretap statutes and what *is* discoverable under those statutes has already been provided to Defendant; and further, the raw phone data was not reviewed by the judge who authorized the wiretaps. The data is also not discoverable under *Brady* because it is not exculpatory. It does not have a bearing on Defendant's guilt, nor could it be used to impeach the affiant in a fashion that impacts Defendant's guilt.

Defendant intends to use the requested discovery to mount a *Franks* challenge, but in trying to use *Franks* as a separate channel to obtain discovery, he is misusing the process and seems to have it backwards. A defendant must *first* make a showing of a deliberate falsehood before being able to challenge an affidavit. Here, Defendant expects that the Government should be required to turn over all requested discovery to him—whether or not that material should be disclosed under the federal rules—hoping to find something in the materials that might help raise a *Franks* issue.

As the Government notes, similar requests have been denied in other cases. *See* 13cr01152 WJ. In *U.S. v. Mirabal,* the undersigned was the assigned trial judge, and a request for cell phone data in that case was denied. The Court found no connection between an alleged falsehood about whether use of a pole camera would be feasible and the cell phone data requested by the defendant, and also noted that defendant was "conflating the standard for a *Franks* hearing and discovery under Fed.R.Civ.P. 16." *Id.,* Doc. 109 at 8-9.

The Government also points to a decision by United States District Judge James O. Browning in *U.S. v. Roybal* in which defendant requested, *inter alia,* raw pen register data that was summarized in wiretap affidavits. *See* 12cr3182 JB, Doc. 620 at 44-57. Judge Browning denied the request for the same categories that are used as the basis for discovery here. First, Judge Browning found that raw pen register data was not discoverable under Rule 16. He noted

8

that validity of a criminal warrant requires review of the evidence presented to the judge who issued the wiretap, and that defendant did not establish that the Government had presented raw pen register data to that judge. *Id.* at 46-47 (citing *United States v. Mitchell*, 274 F.3d 1307, 1309 n.1 (10th Cir. 2001) (defendant moving to suppress wiretap evidence may only use the information that the United States presented to the judge who issued the wiretap). Second, Judge Browning also rejected defendants' arguments that they needed the raw pen register data to verify the accuracy of the statements in the warrant affidavit in order for them to be able to present *Franks* challenges. The court noted that defendants could not use *Franks* to ask the Court for discovery without *first* making the substantial preliminary showing required by *Franks.* 112cr3182 Doc. 620 at 54 (noting courts that have rejected similar requests for discovery to mount *Franks* challenge) (citing *U.S. v. Harding,* 273 F.Supp.2d 411 (S.D.N.Y. 2003).

Third, Judge Browning also found that the raw pen register data was not discoverable under *Brady*. Defendants in the *Roybal* case explained that the requested data could contain cell site data that would show that the phones on which the Government had wiretaps were not in the same location as the defendant who was allegedly using them—thus showing that the Government had misidentified the user of the phone. Judge Browning concluded that this was speculation and "hopeful wishing" on defendants' part and was "not sufficient to order wholesale discovery." *Roybal,* 12cr3182 JB, Doc. 620 at 55-56. *See United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988)(citing *Jencks v. United States*, 353 U.S. 657, 667 (1957) (Although Rule 16's language is permissive, it does not authorize "a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition.").

Defendant in this case is making a request similar to the *Roybal* defendant, and using the same grounds to do so. The Court finds that the Government is not required to turn over the requested raw phone data under either Rule 16, *Brady, Giglio,* or 18 U.S.C. §2518(9).

**III.    Controlled Substance Analogue Material   (see Doc. 116, pp. 14-16)**

Defendant seeks disclosure of scientific/analytical material on the basis that it is necessary for the preparation of the defense. The requested material is listed on pages 14 to 16 of the motion and ranges from "internal DEA emails, memos, and/or discussions related to controlled substance analogue determination" to "[r]ecords demonstrating the qualifications of the responsible analyst(s) and technical reviewer(s) in the analytical testing in this matter, including employment applications, academic transcripts, disciplinary files, training records, and personnel files with appropriate redaction." Doc. 116 at 14-15.

The Analogue Act, 21 U.S.C. §803(32) and 813 defines a controlled substance analogue as any substance that 1) has a chemical structure which is substantially similar to the chemical structure of a controlled substance in schedule I or II; (2) has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II ("Prong One") and (3) is represented or intended to have such an effect. 21 U.S.C. §802(32) ("Prong Two").[3]

Prong One is related to the process by which chemists from the DEA analyze the structure of alleged analogues and make determinations of whether the alleged analogue is

---

[3] Under a proper reading of 28 U.S.C. §802(32), (i) must be found in *conjunction* with either (ii) or (iii), despite the apparently disjunctive character of the statute's provisions. *See U.S. v. Forbes,* 806 F.Supp. 232, 236 (D.Colo. 1992).

indeed substantially similar to the scheduled drug. Defendant also expects that this process will involve documents (including e-mail) containing this analysis and discussion of the protocol for each alleged analogue. The analysis involved in determinations relevant to Prong Two is most likely more complex, since analyzing the *effects* of an analogue would involve testing the pharmacokinetics of the substance, including in vitro testing of the chemicals to see how the behavior of a living specimen (such as a rodent) is affected. Documentation for this process would include publication by public research facilities as well as private research conducted by the DEA, and Defendant seeks access to all of these materials, including experimental protocols, results and analysis.

Because the Government notes that laboratory testing is incomplete for several drug exhibits and because the parties have not yet discussed voluntary disclosure of some of the items sought by Defendant, *see* Doc. 124 at 14, n.5, the Government asks the Court to hold this dispute in abeyance. Given the large number of analogue-related requested items, the Court finds that a ruling on this matter is premature and should not be made until after the laboratory testing is complete and the parties have engaged in meaningful discussions which may clarify and narrow the requests. Accordingly, the Court denies Defendant's request for controlled substance analogue material; however, such denial is without prejudice to Defendant re-filing this portion of his motion to compel after laboratory testing is complete and in the event discussions between counsel cannot resolve this issue.

## CONCLUSION

The Court finds and concludes that Defendant's request for raw phone data is DENIED. The Government is not obligated to disclose this material under either Rule 16, *Brady, Giglio,* or 18 U.S.C. §2518(9). The Court DENIES WITHOUT PREJUDICE Defendant's request for

controlled substance analogue material until the laboratory testing is complete on all the drug exhibits and until the parties have discussed voluntary disclosure of the requested items.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE